AJAX ELECTROTHERMIC CORPORATION, A CORPORATION OF NEW JERSEY, AND EDITH NORTHRUP, PLAIN-TIFFS-APPELLANTS, v. THE FIRST NATIONAL BANK OF PRINCETON, EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF EDWIN FITCH NORTHRUP, DEFENDANT-RESPONDENT.

Argued March 19, 1951—Decided May 7, 1951.

*Mr. John F. McCarthy, Sr.*, argued the cause for the appellants (*Messrs. McCarthy & McCarthy*, attorneys).

*Mr. Ralph S. Mason* argued the cause for the respondent (*Messrs. Montgomery & Mason*, attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J.    This is an action for the acceleration and termination of a trust set up in the will of Edwin Fitch Northrup, who died on April 29, 1940.   From a judgment of the Chancery Division of the Superior Court dismissing the complaint the plaintiffs took an appeal which we have certified on our own motion.

The determination of the appeal depends upon the intent of the testator as expressed in his will and it is therefore necessary to quote from it at some length:

"EIGHTH:   All the rest, residue and remainder of my property whether real, personal or mixed, whatsoever and wheresoever situate, including any legacies that may lapse, fall or be ineffective, I give, devise and bequeath, to the First National Bank of Princeton, my executor and trustee, in trust nevertheless as hereinafter provided.

NINTH:  In lieu of dower, I direct that all the net income of the trust herein created be paid to my wife, Margaret J. S. Northrup, during her natural life.   If it shall appear that the net income shall not be sufficient for the proper care and maintenance of my wife, the principal of said trust, or such portion thereof as my trustee shall deem necessary, may be disposed of by my trustee for that exclusive purpose.

TENTH:  I direct that upon the death of my wife, Margaret J. S. Northrup, that an amount not exceeding One Hundred and Fifty Dollars ($150.00) monthly be paid to my sister, Edith Northrup, during her natural life, out of the net income from the aforesaid trust and not otherwise, and that the balance of the net income from the trust herein created be paid over to the Ajax Electrothermic Corporation, to be used directly and not indirectly for the sole benefit of the officials and employees of the Ajax Electrothermic Corporation, such determination and distribution to be made by the Board of Directors of said Corporation.

ELEVENTH:  I direct that upon the death of my wife, Margaret J. S. Northrup, and my sister, Edith Northrup, that the trust herein created shall terminate and the balance of the interest and principal remaining be paid over to the Ajax Electrothermic Corporation, absolutely, to be used directly and not indirectly for the

sole benefit of the officials and employees of the Ajax Electrothermic Corporation, such determination and distribution to be made by the Board of Directors of said Corporation.

TWELFTH: In the event that the Ajax Electrothermic Corporation is merged, amalgamated, reorganized, sold, or combined with some other corporation or institution, then, upon the occasion of any of the aforesaid events of this paragraph, I direct that my trustee shall determine to the best of its ability if the personnel of the aforesaid Ajax Electrothermic Corporation remains intact, substantially as a whole, either independently, or in connection with others, and upon such determination pay over to such organization, institution, or otherwise, funds and property as herein provided in substitution to the said Ajax Electrothermic Corporation. It is definitely understood that any action of my executor and trustee under the provision of this paragraph shall be final without liability or responsibility to any party or parties whatsoever.

THIRTEENTH: I direct, in the event that the said Ajax Electrothermic Corporation, or such other parties as determined by my executor and trustee entitled to benefits hereunder in accordance with item tenth hereof cannot be assembled or ascertained, refuses or is prohibited to accept any or all of the benefits hereby created, that my estate shall be disposed of as follows, namely: That my executor and trustee is hereby authorized to give and bequeath the rest, residue and remainder of my estate to some worthy charity, or charities, at the discretion of my executor and trustee, except that the term charity, or charities, as used herein shall not be construed to include any Church, or religious organization of any kind whatsoever. It is definitely understood that any action of my executor and trustee under the provision of this paragraph shall be final, without liability or responsibility to any party, or parties, whatever.

FIFTEENTH: I direct that my executor and trustee shall not dispose of the stock of which I die seized of the Ajax Electrothermic Corporation, unless it be deemed necessary, in its discretion, for the maintenance and support of my wife; or unless the corporation is dissolved, merged, amalgamated, reorganized, bankrupt, or by any operation of law ceases to exist, in that event my executor and trustee may exchange or sell the stock, accepting or retaining other stocks or securities in its place and stead. It is definitely understood that any action of my executor and trustee under the provisions of this paragraph shall be final without liability or responsibility to any party or parties, whatsoever."

In accordance with the terms of the trust, the testator's widow received the net income therefrom until her demise on May 8, 1945, and since that time the testator's sister has received $150 a month out of the net income and the balance thereof has been paid to the Ajax Electrothermic Corporation

for distribution to its officials and employees. On August 11, 1950, Ajax and Edith Northrup, the testator's sister, commenced this action by filing a complaint in which it was alleged that Ajax had purchased for Edith Northrup an annuity of $200 a month and that in return therefor she renounced her interest under the will. The plaintiffs prayed for judgment terminating the trust.

On October 28, 1950, the defendant served a notice of motion for the entry of judgment dismissing the complaint for lack of indispensable parties. On November 3, 1950, the return day of the motion, the plaintiffs filed with the court an agreement between Ajax and Edith Northrup which stated that the corporation had purchased for her for $33,490 an annuity of $200 a month, in consideration of which she had executed and delivered to the trustee an unconditional release of her life interest under paragraph 10 of the will. Along with this agreement the plaintiffs filed a release which recited that:

"I, Edith Northrup, * * * do hereby for myself, my heirs, executors and administrators, remise and release my respective life estate to which I have or may become entitled by virtue of the said last will and testament of Edwin Fitch Northrup, my brother, so as to terminate said life estate, and I do hereby relieve, release and forever discharge the said First National Bank of Princeton, New Jersey, Executor and Trustee of aforesaid, from all further duties and obligations of their said office concerning my right, title, and interest in my respective life estate in said trust property."

This release, executed on October 30, 1950, simultaneously with the memorandum agreement, provided further that it take effect "immediately and unconditionally." On November 17, 1950, the trial court entered judgment granting the defendant's motion and dismissing the action. It is from this judgment that the plaintiffs have appealed.

The principal question argued on this appeal is whether or not the release and renunciation by Edith Northrup operate to permit the acceleration and termination of the trust itself. This question must be answered in the negative. It is well settled that where a settlor provides that the *corpus* of a trust

shall go to the remainderman on the death of the life tenant, distribution to the remainderman will be made prior to the death of the life tenant, if the life estate is sooner terminated by other means, in the absence of some controlling equity or an intention of the testator, expressed or implied, to the contrary. *Beideman v. Sparks,* 61 *N. J. Eq.* 226 *(Ch.* 1901), affirmed *o. b.,* 64 *N. J. Eq.* 374 *(E. & A.* 1902) ; *Anthony v. Camden Safe, &c., Co.,* 106 *N. J. Eq.* 41, 42–43 *(Ch.* 1930) ; *Carter v. Martin,* 122 *N. J. Eq.* 262, 270–271 *(Ch.* 1937) ; *Bennett v. Fidelity Union Trust Co.,* 123 *N. J. Eq.* 198 *(Ch.* 1938) ; *Walter v. Thielke,* 127 *N. J. Eq.* 402, 404 *(Ch.* 1940) ; *Simpkins v. Simpkins,* 131 *N. J. Eq.* 227, 230–233 *(Ch.* 1942) ; *Provident Trust Co. of Phila. v. Osborne,* 133 *N. J. Eq.* 518, 522–523 *(Ch. Div.* 1942) ; *Lawrence v. Westfield Trust Company,* 1 *N. J. Super.* 423, 432–434 *(Ch. Div.* 1948) ; *Hackensack Trust Co. v. Barkerding,* 9 *N. J. Super.* 595, 602–603 *(Ch. Div.* 1950). See also *Mesce v. Gradone,* 1 *N. J.* 159, 165 *(Sup. Ct.* 1948) ; *Restatement, Trusts,* § 337.

An examination of the will in the instant case shows that to permit an acceleration and termination of the trust prior to Edith Northrup's death would defeat the intention of the testator. First, by paragraph 10 of the will the officials and employees of Ajax are entitled to the benefit of the net income of the trust in excess of $150 a month during the life of Edith Northrup. The testator must have realized that the officials and employees of Ajax would necessarily be changing from time to time and that the net income after the payment of $150 a month to his sister would therefore go, not to the officials and employees of Ajax at his death, but to those who were officials and employees of Ajax at the time or times that the net income was available for distribution. If his intent had been to benefit only those who were with Ajax at the time of his death rather than the men who were officials and employees of Ajax when each successive payment of income was made to Ajax by the trustee he would have used quite different language from what we find in his will. Obviously he intended that the officials and employees of Ajax at the time of his

death should not share in these payments from income if they ceased to remain with the company. Manifestly, he had in mind that these payments to the changing personnel of Ajax might continue for a very considerable time, for he provided in paragraph 12 of his will that in the event of a merger, amalgamation, reorganization, sale or combination of Ajax the officials and employees of the corporation should continue to receive the benefits under the trust, if they remained as a recognizable group of which the trustee was made the final arbiter without liability to any person whatsoever. The testator was seeking to perpetuate his corporation through promoting the individual interests of those who were operating it. His intent to preserve his company is further reflected in paragraph 15 of the will forbidding his executor and trustee to dispose of the stock of Ajax except under certain conditions which have not as yet occurred.

██ Another indication of the testator's intent is to be found in paragraph 11, wherein it is provided that the officials and employees of the corporation at the time of the death of the last life tenant should share the *corpus* of the trust. Until the death of the last life tenant the persons that are to share in the gift cannot be ascertained. To terminate the trust at the present time would result not only in an acceleration in the distribution of the *corpus;* it would mean its distribution to others than those the testator intended, for some who are now officials or employees of the corporation might not be then, and others who are not now officials or employees might be then. It has frequently been held that there can be no acceleration where the persons constituting the remaindermen cannot be definitely ascertained in advance of the death of the life tenant, since to do so would be contrary to the testator's intention. *Godfrey v. Roberts,* 65 *N. J. Eq.* 323 (*Ch.* 1903); *In re Smith,* 94 *N. J. Eq.* 1 (*Ch.* 1922); *Lawrence v. Westfield Trust Company,* 1 *N. J. Super.* 423, 432–434 (*Ch. Div.* 1948); *The Trenton Banking Co. v. Hawley,* 7 *N. J. Super.* 301, 309 (*Ch. Div.* 1950); Compare, *Bennett v. Fidelity Union Trust Co.,* 123 *N. J. Eq.* 198 (*Ch.* 1938); *Walter v.*

*Thielke,* 127 *N. J. Eq.* 402 (*Ch.* 1940). See 3 *Scott on Trusts* (1939) § 340, *pp.* 1866, 1868–1869. To accelerate and terminate the trust in the circumstances here presented would work a fraud on the will, thereby enriching the present officials and employees of Ajax to the detriment of its officials and employees at the time of the death of Edith Northrup.

■ Moreover, the dismissal may be justified for another reason. A reading of the quoted paragraphs of the will clearly discloses that the present and future officials and employees of Ajax are the beneficiaries of the trust. In paragraph 10 of the will it is provided that during the life of Edith Northrup the balance of the net income remaining after the payment of $150 monthly to her shall be paid over to Ajax "to be used directly and not indirectly for the sole benefit of the officials and employees of the Ajax Electrothermic Corporation." In paragraph 11 the testator specifically directed that on the death of his wife and sister the trust shall terminate and the *corpus* be paid over to Ajax, likewise "to be used directly and not indirectly for the sole benefit of the officials and employees" of the corporation. That the testator intended to benefit the future as well as the present officials and employees of the corporation is further shown in paragraph 12, wherein provision is made for payment to them even in the event of termination of the corporation "if the personnel of the aforesaid Ajax Electrothermic Corporation remains intact, substantially as a whole, either independently, or in connection with others." As previously pointed out, the officials and employees of Ajax are constantly changing and will continue to change, and the interests of those who are now associated with the corporation conflict with the interests of those who may be with it in the future. It is thus apparent that the future as well as the present "officials and employees of Ajax Electrothermic Corporation" have an interest in the trust and are entitled to be represented and heard in any action involving the trust. Moreover, paragraph 13 of the will provides that in the event the officials and employees do not remain a recognizable group so as to take under the will,

the trustee is authorized "to give and bequeath the rest, residue and remainder of my estate to some worthy charity, or charities." Certainly, therefore, these charities through the Attorney-General should likewise have been joined in this action so that they might protect their rights under the will. An acceleration and present termination of the trust would not only adversely but irrevocably affect the interests these officials, employees and charities have in it. Equity demands that they be given an opportunity to protect their interests from extinguishment.

■ The concurring opinion goes on the theory that we cannot determine the question of the acceleration and termination of the trust without affording the officials and employees of Ajax and the Attorney-General a hearing. Our ruling, however, is not adverse to the future officials and employees of Ajax or to the charities, and the present officials and employees have been substantially though not technically represented by the corporation. In these circumstances, we, of course, concede that they are not bound by our views on the question of the acceleration and termination of the trust, which we have necessarily considered in reaching our decision as to the parties entitled to be heard; at the same time we hope we may be avoiding unnecessary future litigation.

The judgment of the court below dismissing the action is affirmed.

OLIPHANT, J. I agree that the action should have been dismissed but not for the reasons expressed in the majority opinion. There was lack of jurisdiction in the court of original jurisdiction because of the failure to join proper and indispensable parties. The beneficiaries of the trust are the officials and employees of the Ajax Corporation, not the corporation itself. That those officials and employees of the Ajax Corporation were those indispensable parties is admitted by the majority of this court. By what authority then does this court take jurisdiction and decide the case on the merits when such parties are not joined in the action? Should those

necessary parties be, in effect, forever foreclosed from having their day in court? They had a right to be heard before their rights were determined by *dictum*. The officials and employees of the corporation who may be interested in any future litigation of the subject matter, as well as the Attorney-General, should have a right to be heard. For this court to attempt to determine the controversy at this point is a preemptive exercise of jurisdiction.

The determination of the appeal on its merits depends on the intent of the testator expressed in his will and on that issue I would vote to reverse.

Mr. Northrup's will provides that his wife be provided for during her life then, at her death, his sister shall receive $150 per month for life, the balance of the income from the trust estate to be paid over to Ajax to be used directly for the benefit of its officials and employees, and upon the death of his wife and sister that the trust be terminated and the principal and interest remaining be paid over to Ajax and used directly for the benefit of its officials and employees.

Mr. Northrup was primarily interested in those officials and employees of his company who had worked with him and had helped build it to the success it had achieved at the time he made his will, not in those who might be with the company in after years, perhaps long after his death. If his sister had died shortly after his wife the trust would have terminated and its funds distributed. Both his wife, before her death, and his sister could have renounced and the provisions made for them rendered nugatory. Most people think of a life estate as ending at the death of a life tenant and fail to contain in their wills any specific provision as to what should happen in the event the life tenant prior to death refuses to take. That in effect is what occurred here and the will must be searched to discover the desires of the testator in such an eventuality. If the will does not disclose them the court should make such disposition as it thinks the testator would have made if he had thought about it. "It is the most natural presumption that a testator would desire the fund

or estate to go, on the termination of a life estate by some cause other than the life tenant's death, in exactly the same way as if the termination had been caused by the life tenant's death. Hence such has been laid down as the rule where there is no different intent or desire on the part of testator evident from the will." *Bennett v. Fidelity Union Trust Co.,* 123 *N. J. Eq.* 198 (*Ch.* 1938).

A termination of the trust at this time would in every way carry out the testator's desires. His sister is provided for to the same or greater extent than he had provided for her and the funds would be distributed to those most entitled which undoubtedly was what he wished. The members of the class constituting the remaindermen can be definitely ascertained now in accordance with the testator's intentions.

There is no controlling equitable reason why the trust should not be terminated. To do so does not run counter to the rule existing here that the beneficiaries of a trust may not terminate it *contra* to the intention of the settler. It is that intention of the settlor which governs. *Mesce v. Gradone,* 1 *N. J.* 159 (1948).

The majority opinion states that the most conclusive indication of the testator's intention is found in par. 11, providing that the officials and employees of the corporation at the time of the death of the last life tenant shall share the *corpus* of the trust and that until such time the members of the class to share in the gift cannot be ascertained, that it would mean a distribution to others than those the testator intended. How can this be so when the testator had no control over the life span of either life tenant and had made no provision for distribution in the event of a renunciation?

Further, a termination of the trust at this time would obviate the necessity in perhaps the distant future of the executor and trustee determining to what charity or charities the estate should go as directed in the thirteenth paragraph of the will. This was the last thing the testator desired.

I am authorized by Mr. Justice BURLING to state that he concurs in the views herein expressed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD and ACKERSON—5.

*For dismissal and reversal on merits*—Justices OLIPHANT and BURLING—2.