## TUCKER STEVEDORING CO. v. SOUTHWARK MFG. CO.

Circuit Court of Appeals, Third Circuit.
February 20, 1928.

No. 3745.

Shipping ⬤⟿42(7)—Continuing contract for lighterage service implies that lighters furnished be seaworthy.

In a continuing contract for lighterage service, there is an implied condition that the lighters furnished shall be seaworthy.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in admiralty by the Southwark Manufacturing Company against the Tucker Stevedoring Company. Decree for libelant, and respondent appeals. Affirmed.

Willard M. Harris, of Philadelphia, Pa., for appellant.

Acker, Manning & Brown, of Philadelphia, Pa. (Everett H. Brown, Jr., of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. Libelant, the Southwark Manufacturing Company, a user in its business of imported chalk, had its works and wharf at Camden, on the Delaware river, opposite Philadelphia; the respondent was a lighterage company. For some years, in pursuance of a contract embodied in letters exchanged between the parties for "lighterage and discharging," the lighterage company furnished lighters and towed the Southwark's chalk, arriving at the port of Philadelphia from abroad, and discharged the same at the Southwark's Dock in Camden. The lighterage company, on November 26 and 27, 1923, received from the steamship Verentia, lying at Philadelphia, 500 tons of Southwark's chalk on board the scow Katie, which it had furnished under such contract. Loading ended about noon of the 27th, after which the Katie was towed to the Southwark's wharf. She laid there until about 10 that night, when her master found she was listing from leaking. She continued to leak, and sank that night, and the chalk proved a total loss. The Katie's age and condition were such that she was abandoned. Thereupon Southwark filed this libel in personam against the lighterage company, alleging the loss and leakage was caused by the unseaworthiness of the Katie. The lighterage company in defense raised three questions, viz.: First, the Katie was seaworthy; second, her leaking was due to the fact that a spike in Southwark's wharf below water level caused it; and, third, that in any event it had never contracted the Katie was seaworthy, and consequently could limit its liability. On all these issues the court found against the lighterage company. Thereupon this appeal was taken, and the same questions are here involved.

On the two questions of fact, viz. that the Katie was unseaworthy and that the leakage and loss were due to that, and not to a nail or projection from libelant's wharf, we agree with the finding of the trial judge. Turning to the third question, we note that the contract here involved was for "the lighterage and discharging; we, to take the chalk, delivered to us in our barges, from alongside of steamers as per your request, and unload it from the barges into your small cars on the dock at Camden, N. J." The contract contained no stipulation that the barges were to be seaworthy, so the question is: Was there an implied contract of lighter seaworthiness, which the law writes into this contract for lighterage service? The present contract being for lighterage, we think there was an implied contract that the lighters would be seaworthy. In that regard we agree with the holding of The Loyal (C. C. A.) 204 F. 931, where it was said: "The vessel owner had a written contract with the cargo owner for lighterage services covering an extended period. This lighterage contract implied an obligation that the lighters to be furnished under it should be seaworthy. * * * The implied contract that the lighter was seaworthy, attached to the * * * contract, was, in our opinion, just as much the personal contract of the vessel owner as the express contract itself. It was precisely as if written in the contract."

Such being the case, and the contract in hand having imported into it a stipulation for seaworthiness, and thereby made the personal contract of the lighterage company, we agree with the reasoning of the Circuit Court of Appeals of the Second Circuit in the foregoing case, and that of the Sixth Circuit in Great Lakes Towing Co. v. Mill Transp. Co., 155 F. 11, 22 L. R. A. (N. S.) 769, where it is said: "It seems to us altogether un-

likely that Congress intended to qualify the power of an owner to make contracts in relation to his ship, which by the universal law would be valid if made about anything else, and would be enforced in the courts in common-law actions. It would be an anomaly that a party competent to do business should be unable to make a valid contract about his own affairs, or be given such an immunity as to make his stipulations of uncertain value." We are therefore of opinion the court below committed no error in denying the claim of the lighterage company for a limitation of liability. And we may add we regard this conclusion as consonant with the general views expressed by the Supreme Court in Richardson v. Harmon, 222 U. S. 106, 32 S. Ct. 27, 56 L. Ed. 110, that section 18 of the Act of June 26, 1884, 23 Stat. 57, c. 121 (46 USCA § 189; Comp. St. § 8028), leaves the vessel owner "liable for his own fault, neglect and contracts," and in Pendleton v. Benner, 246 U. S. 356, 38 S. Ct. 331, 62 L. Ed. 770, where the above was quoted with the announcement: "We are not disposed to disturb the very strong and deliberate intimation of Richardson v. Harmon in their application to the present case * * * Unless the petitioner can be discharged from his contract altogether, he must answer for the breach, whether he was to blame for it or not."

The decree below is affirmed.