## S. C. LOVELAND CO., Inc., v. BETHLEHEM STEEL CO.

Circuit Court of Appeals, Third Circuit.
July 17, 1929.

No. 4076.

Otto Wolff, Jr., and Lewis, Adler & Laws, all of Philadelphia, Pa., for appellant.

J. T. Manning, Jr., of Philadelphia, Pa., Bigham, Englar, Jones & Houston, of New York City, and Acker, Manning & Brown, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. S. C. Loveland Company, a corporation engaged in the transportation of merchandise in inland waters, contracted with the Bethlehem Steel Company to move 600 tons of pig iron from Sparrows Point, Maryland, to Hainesport, New Jersey. The contract did not specify any means of conveyance, although it appears that because of shallow water at Hainesport the movement of the cargo would be made on a deck lighter; nor was the voyage agreed upon, although it is not improbable that, because of the relative positions of the ports of origin and destination, both parties contemplated that a course would be laid up the Chesapeake Bay, through the Chesapeake & Delaware Canal, and up the Delaware River. The Lighter "George W. Bowen," owned and assigned to this work by the Loveland Company, took on board at Sparrows Point about 200 tons of pig iron. The Steam Tug "Senator Penrose," otherwise owned but chartered by the Loveland Company for the voyage, proceeded up the bay with the Bowen and two other craft in tow, tandem. On reaching Chesapeake City the tug and tow passed through the locks and proceeded up the canal without incident until, reaching its narrowest point, the Bowen for no apparent reason began to take in water, and she took it in so rapidly that the master of the tug found it necessary to beach her. In this maneuver she listed and dumped nearly the whole of her cargo, of which only thirty-six tons were recovered. For the damages it had sustained in the loss of part of its cargo, and in and about the salvage and further transportation of the balance thereof, and the freight paid for transportation by the Bowen, the Bethlehem Steel Company filed a libel in personam against S. C. Loveland Company, Inc., owner of the Lighter "George W. Bowen," and in rem against the Steam Tug "Senator Penrose," averring with greater particularity the transaction and events recounted and charging the Loveland Company with breach of contract of carriage in that it failed to perform its obligation to deliver the whole cargo at the port of destination and, particularly, in that it failed to furnish a seaworthy lighter for the undertaking,

and charging the Loveland Company, the Lighter Bowen and/or the Steam Tug "Senator Penrose" with about every act of negligence attributable to an owner and a craft in maritime affairs. The Loveland Company by its answer said that it operated the lighter in the transportation of merchandise for hire but not as a common carrier; denied generally all the material averments of the libel and particularly that the loss was due to a breach of the contract of carriage, and/or negligence on its part or that of the lighter; but, averring that the lighter was tight, staunch and strong and in all respects seaworthy, alleged that the loss of the cargo was due to perils of the sea for which the carrier was not answerable and that whatever faults of navigation there may have been were those of the tug, which alone is liable.

The owner of the tug by its answer disclaimed all responsibility for the contract of carriage and averred that its responsibility was limited to its contract of towage and, denying all fault in navigation, charged loss of the cargo to the condition of the lighter which, in turn, was due to the negligence of the libellant in the stowage of the cargo. From an interlocutory decree finding that the loss suffered by the libellant was due to the unseaworthiness of the lighter and that the tug was not in fault, and holding that the libellant should recover its damages from Loveland Company and the libel be dismissed as to the tug, damages to be agreed upon or found by a Commissioner, the Loveland Company alone appealed, but the libellant, though it did not appeal, still seeks to hold the tug jointly responsible under authority, we imagine, of The John Twohy, 255 U. S. 77, 79, 41 S. Ct. 251, 65 L. Ed. 511.

The genesis of the case was a contract between the corporate parties, tersely made by correspondence and singularly free from ambiguity. What was the contract? Clearly it was not a charter party but a plain personal contract of affreightment. Its terms were as simple as could be. They provided for the movement of a cargo of a certain kind, of a certain tonnage, from port to port, at a named freight. It contained no provision as to how or by what means the transportation should be effected and no exceptions or reservations, though the bill-of-lading that followed contained the exception of peril of the sea. So, also, it contained no express warranties, though of course it contained an implied warranty of seaworthiness of the craft to be furnished for the work. ▮ In this situation, which we regard as purely contractual, the Loveland Company

defends on the ground that it is not a common carrier but a private carrier or bailee to transport for hire where, it says, the law imposes upon the cargo owner the burden of proving negligence. While it admits the implied warranty of seaworthiness, and, when the lighter foundered, the presumption of her unseaworthiness, it says that, having on its evidence showed the lighter was seaworthy, the presumption disappeared and thereafter the burden of showing negligence devolved upon the libellant, which it has not sustained. There is no trouble about this statement of law in the abstract but when applied to the facts of this case and the way they were tried it should be distinguished. There is no occasion to discuss and cite authorities for the presumption of unseaworthiness of a vessel which the law raises when she sinks without any known reason. Among the many cases cited in The Arctic Bird (D. C.) 109 F. 167, we select Du Pont de Nemours v. Vance, 19 How. 162, 15 L. Ed. 584, which we surmise has been followed by all courts without variation. There the Supreme Court said:

" 'To constitute seaworthiness of the hull of a vessel in respect to cargo, the hull must be so tight, staunch, and strong as to be competent to resist all ordinary action of the sea, and to prosecute and complete the voyage without damage to the cargo.' * * * In view of this rule, as to what constitutes seaworthiness, it has been uniformly held that if a vessel springs a leak, and founders, soon after starting upon her voyage, without having encountered any storm or other peril to which the leak can be attributed, the presumption is that she was unseaworthy when she sailed."

Therefore all questions of negligence in this case must await the decision of that issue. If, on that issue, the Loveland Company should succeed, then, manifestly, the libellant will be forced to prove negligence. If, on the other hand, it fail, then the presumption remains and controls and all questions of negligence disappear from the case.

The first question then is one of contractual liability to furnish a seaworthy vessel—a question of the lighter's seaworthiness not of the respondents' negligence, and the cases we shall cite concern the evidence necessary to rebut the presumption of unseaworthiness. They do not concern any presumption of negligence or evidence necessary to rebut any such presumption. Cases cited by the Loveland Company and particularly The C. R. Sheffer (C. C. A.) 249 F. 600; The Kathryn B. Guinan (C. C. A.) 176 F. 301; Hildebrandt v. Flower Lighterage Co. (D. C.) 277

F. 436; The Monongahela (C. C. A.) 282 F. 17, having to do mainly with issues of negligence, are either inapplicable or distinguishable.

The libellant, recognizing, as we do, that the Loveland Company was not a common carrier, did not rely upon the doctrine applicable to the case of a common carrier which raises a presumption of negligence from the mere showing of delivery of goods to the carrier and their non-delivery to the consignee, but, realizing that the presumption of unseaworthiness arising from an unexplained sinking extends to a private carrier, resorted to that presumption and, discarding its blanket averments of negligence, stood on it. The Loveland Company, thus confronted by the presumption and being driven to rebut it, set about the task of proving the lighter's seaworthiness. This became purely an issue of fact. The first fact was that the lighter filled and sank without any reason then apparent. She just sank. Shortly before the disaster, men aboard the Bowen felt a bump, evidently with the lighter ahead. When she was filling they went below and saw a "big stream of water" entering the hold from her port side, near the stern. Six weeks after the disaster and after the lighter had been moved and beached three times a survey disclosed a hole of about ⅞ of an inch in a 4 inch plank on her port side. This hole the Loveland Company contends caused the lighter to fill, that it must have been made by scraping the side of the canal or encountering some submerged object, especially in view of the proof of her previous overhauling and revealed good condition, and that the disaster, in consequence, resulted from a peril of the sea. Evidence of previous good condition has some probative value and therefore is admissible in rebutting the presumption of unseaworthiness, but clearly it is not enough alone. A party rebutting the presumption must show affirmatively that the damage was caused by a peril of the sea or other things excepted by the contract of affreightment and cannot absolve himself from blame by merely showing such a state of facts that the court is unable to discover how the disaster occurred, or that it might have occurred from something which, if only it were known, is a peril of the sea. Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012; The Queen (D. C.) 78 F. 155; Sanbern v. Wright & Cobb Lighterage Co. (D. C.) 171 F. 449; Tucker Stevedoring Co. v. Southwark Manufacturing Co. (C. C. A.) 24 F.(2d) 410.

We find with the learned trial judge that this evidence standing alone and uncontradicted would not rebut the presumption of the lighter's unseaworthiness in the circumstances. The evidence, however, was substantially shaken by testimony that the hole disclosed by the survey was not near the stern but near amidship and that aside from a large stream of water entering near her stern there was "a good, big, wide stream of water * * * coming in between her seams." When, as we hold, the Loveland Company failed to rebut the presumption of the lighter's unseaworthiness, all questions of negligence and the burden of proving negligence fall out of the case and the company remains liable under its breached warranty of seaworthiness. We find that the libellant should recover conformably with the decree, which is affirmed. This finding is wholly apart from any admission made to the master and engineer of the tug by the master of the Bowen at Sparrows Point to the effect that the lighter was then leaking, admitted by the trial court on the issue between the libellant and the tug and excluded as evidence against the Loveland Company.