**CONTINENTAL INS. CO., Inc., v. ANCHOR LINE (HENDERSON BROS.) Limited, et al.**

No. 10433.

District Court, E. D. New York.

Nov. 9, 1931.

Single & Hill, of New York City (Alonzo L. Tyler, of New York City, of counsel), for libelant.

Lord, Day & Lord, of New York City (James S. Hemingway, of New York City, and Joseph W. Wyatt, of counsel), for respondent Anchor Line (Henderson Bros.).

Choate, Larocque & Mitchell, of New York City (Joseph Larocque, of New York City, of counsel), for respondent Cory Bros. & Co., Limited.

GALSTON, District Judge.

The proof in this libel is reasonably clear. Damage is claimed to fifty-five bales of cotton goods, sustained when a lighter carrying this and other cargo, and owned and operated by the respondent, Cory Bros. & Co., Limited, sank in the harbor at Port Said.

On July 7, 1926, Hotchand Jethanand delivered to the respondent Anchor Line (Henderson Bros.), Limited, at the Port of Bombay, fifty-six bales of cotton goods destined for Port Said. They were shipped on the steamship Castalia of the Anchor Line, which arrived at Port Said on July 22d; 1926. On the same day she discharged her Port Said cargo into lighters, including the bales in question. These bales, together with sixty-nine bales of cotton yarn, and three hundred and thirty-four baskets of tamarind, were placed in the lighter No. 57, furnished by the other respondent, Cory Bros. & Co., Limited. The loading was proper, without list, and the lighter was floating level when she left the Castalia. The weather was fine and the water in the harbor smooth.

The lighter was moored end on to one of the chains fastened in the wall or bulkhead of Cory Bros. yard. The lighter 57 remained at a distance of about thirty feet from the quay, held in position by another chain running to a mooring buoy at the outboard end. The lighter remained overnight with a native watchman in charge.

Early the next morning, the lighter 57 was found to have sunk at her moorings with her cargo. The fifty-five bales of cotton piece goods were water soaked, and were delivered in that condition to the consignee. No explanation is offered of how the sinking occurred.

The Anchor Line disclaims all responsibility for the damage sustained, on the contention that the contract of carriage was completely performed by it when the goods were delivered from the ship's tackles in the harbor at Port Said.

The bill of lading provides for delivery "from the ship's tackles (where the ship's responsibility shall cease) at the aforesaid port of Port Said or as near thereunto as she may safely get"; and paragraph 10 of the bill of lading reads as follows: "10. In case where the ultimate destination at which the Shipowners may have engaged to deliver the goods is beyond their port of discharging, they act as forwarding agents only from that port; and in all cases the liability of the Shipowners on account of all goods is to cease as soon as the goods are free from the tackles of the Ship."

There are no docks at Port Said, and it is the custom to discharge cargoes by lighters. I think it reasonably follows that the contract contemplated the discharge of the cargo in question by lighters.

The lighter 57 was owned by Cory Bros. & Co., Limited, and operated by them. There was no agreement between Cory Bros. and the Anchor Line concerning the use of this lighter. The lighterage charge was paid by the consignee and not by the Anchor Line.

Since, therefore, the Anchor Line was not obliged to land the goods, for the custom contemplated delivery to a lighter, there is no escape from the terms of the bill of lading. This frees the shipowner from all responsibility when the cargo is delivered in good order and condition from the ship's tackles. It was so delivered in this case by the ship's tackles. and the libel against the Anchor Line should be dismissed.

Cory Bros. & Co., Limited, on the other hand, seek to avoid responsibility by contending that they were acting, not as a common, but a private, carrier, and that, such being the case, the burden rests upon the libelant to prove that the damage was occasioned by their negligence.

The facts cannot warrant any such conclusion. Lighter 57 and her companion lighters 51 and 56 accepted delivery of the goods of all consignees for carriage to shore indiscriminately from the Castalia. Lighter 57 indeed carried, not only the fifty-five bales of cotton goods in question, but also a varied cargo to other consignees. In these circumstances, Cory Bros. & Co., Limited, were common carriers. The Wildenfels (C. C. A.) 161 F. 864.

But whether Cory Bros. & Co., Limited, were private or common carriers does not relieve them from the responsibility of furnishing a seaworthy lighter. The unexplained sinking of the lighter No. 57 raises a presumption of unseaworthiness. S. C. Loveland Co., Inc., v. Bethlehem Steel Co. (C. C. A.) 33 F.(2d) 655; The Jungshoved (C. C. A.) 290 F. 733. There was no explanation given by Cory Bros. & Co., Limited, to meet this presumption of unseaworthiness. Accordingly, the libelant may have a decree against Cory Bros. & Co., Limited.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.

Settle decree on notice.