**R. D. WOOD COMPANY**

v.

**PHOENIX STEEL CORPORATION,**
Appellant.

No. 14334.

United States Court of Appeals
Third Circuit.

Argued Sept. 19, 1963.

Decided Feb. 7, 1964.

922

Michael A. Foley, Philadelphia, Pa., for appellant.

George E. Beechwood, Philadelphia, Pa. (J. Paul Erwin, Jr., Beechwood & Lovitt, Philadelphia, Pa.), on the brief, for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is a suit in admiralty by a buyer of pig iron against the seller for the value of part of the goods sold and paid for. The contract of sale required the seller to deliver pig iron on board a barge to be provided by the buyer at the seller's pier. The dispute concerns iron which was delivered by the seller as agreed onto a barge furnished by the buyer and then lost when the barge sank at the pier some hours later. The buyer attributes this accident to the seller's negligence in overloading the barge.

At the conclusion of the trial, during the course of which the record of a prior exoneration proceeding was introduced in evidence, the court, acting partly upon evidence in this case and partly upon findings in the exoneration proceeding, allowed the buyer to recover the value of the lost cargo. The seller has appealed.

The testimony in this case showed that the seller, disregarding the buyer's instructions that only 1,000 tons could safely be carried by the barge, had loaded it with 1,145 tons of pig iron. The court below found, justifiably, that this was negligent overloading. But this negligence injured the buyer only if the overloading was what caused the barge to sink. Thus a finding as to the cause of the sinking was and is essential to the libellant's right to recover in this case. The court found that the barge sank because it was overloaded. However, the court made this finding, not on the basis of the evidence in this proceeding, but on the ground that the seller was bound by a finding made in the prior exoneration proceeding.

The court's failure to make an independent finding on this issue was a matter of consequence because the record provided an adequate, though not necessarily compelling, factual basis for attributing the sinking to unseaworthiness, for which the seller obviously had no responsibility, rather than to overloading. In its answer, the respondent seller asserted, among other things, that the barge sank because it was unseaworthy. In his opening statement, respondent's counsel contended that the libellant would have "to establish first the seaworthiness of the barge and that the overloading was a proximate cause" of the sinking. Both parties introduced evidence on this issue.

There were no witnesses to the sinking and the captain of the barge, who slept on board the vessel, went down with it. Thus the cause of the sinking had to be established at the trial by inference and opinion. A witness for the buyer deposed that in his opinion the barge sank because it was overloaded. The only stated basis for this opinion was his observation of this barge traveling on the river on another occasion when a comparable, though somewhat smaller, overload had left the vessel dangerously low in the water.

■ On the other hand, there was positive and uncontradicted testimony that during the loading operation the barge showed a "small squirting leak" through a seam about halfway between the floor and the ceiling. This in itself afforded some basis for an inference that the vessel sank because it was not stanch. Moreover, the circumstances under which this unobserved sinking occurred were such as to create a presumption as to cause under the familiar doctrine that "an unex-

plained sinking in calm waters imports unseaworthiness". See The Doyle, 3d Cir. 1939, 105 F.2d 113, 114.

The evidence showed without dispute that the entire cargo of pig iron was loaded before 8 P.M. on March 11. After loading, the barge showed 12 to 14 inches of freeboard. The trial court found that the vessel did not sink until "sometime during the early morning hours of March 12". During the interval of several hours between the completion of loading and the sinking, the barge was moored at a pier in quiet water too far from the stream, according to the testimony, even to be affected by wave action created by any passing vessel. Certainly, the effect of the excess weight of the cargo upon the level of the barge in the water would not be delayed for hours after the loading. Rather, that effect was fully reflected by its posture in the water, showing 12 or 14 inches of freeboard, immediately after loading. In such circumstances, the sinking of a vessel is presumptively the result of unseaworthiness. Commercial Molasses Corp. v. New York Tank Barge Corp., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89; Eastern Gas & Fuel Associates v. Martin Marine Transp. Co., 3d Cir. 1951, 190 F.2d 394; S. C. Loveland Co. v. Bethlehem Steel Co., 3d Cir. 1929, 33 F.2d 655.

On the argument of this appeal, the only suggestion that appellee's able counsel could offer as offsetting these indicia that unseaworthiness caused the sinking was the possibility that the excess 145 tons of cargo may have contributed to the opening of seams below the water line. It is likely that seams opened, but there is at least as much basis for attributing this to the unsoundness of the already leaking hull as to the fact that the barge was carrying 145 tons of cargo in excess of a normal load. Cf. The Doyle, supra.

Thus, the trial judge might well have made a finding that the barge sank because it was unseaworthy if he had regarded this as an issue to be decided upon the evidence in this proceeding and upon that evidence alone. Of course, such a finding would have precluded recovery in this suit.

This brings us to the legal question whether the finding made in the prior exoneration proceeding, that overloading caused the sinking, is binding upon the seller as respondent in this suit.

The earlier proceeding was a libel instituted by a third party, the owner of the barge, asking exoneration from or limitation of liability in connection with the barge's sinking. The present respondent appeared as a claimant, not in the capacity of seller, but as owner of the dock who lost the use of that facility while the sunken barge obstructed navigation. The present libellant also intervened, claiming damages from the barge owner for the loss of its iron. After evidence had been introduced but before the submission of the case for decision, the present respondent filed a praecipe asking the court to "mark * * * [its] claim * * * withdrawn with prejudice". Accordingly, the clerk formally entered this withdrawal "with prejudice" upon the docket. Then, with only the present libellant and the owner of the barge before it, the court made findings, including the one now in question, and rendered judgment limiting the shipowner's liability to the present libellant.

We do not doubt that the voluntary withdrawal of respondent's claim against the shipowner "with prejudice" was effective as a final disposition of that claim. But this involved no finding concerning the cause or circumstances of the barge's sinking. For whatever reason,[1] respondent merely agreed that it would not pursue its claim in the exoneration proceed-

1. Actually, the claim was settled. This is disclosed by a letter dated August 26, 1958 from the barge owner's counsel to the trial judge. This letter is on file with the record of the exoneration proceeding. Petition of S. C. Loveland Co., D.C., 170 F.Supp. 786, No. 117 of 1955 in Admiralty. It advises the court of the settlement of this claim, the execution of mutual releases and the proposed withdrawal of the claim on the record.

ing and that it should be permanently debarred from asserting any future claim against the shipowner in connection with this accident. The consequent docket entry gave legal effect to this tender.

■ It was after this termination of the present respondent's connection with the suit that the remaining controversy was submitted to the court for decision solely between the shipowner and the present libellant. Thus, the present respondent was a stranger to the subsequent judgment and to the fact finding upon which that judgement was based. In these circumstances, the court's findings had no effect upon respondent, under the familiar general rule that "a person who is not a party or privy to a party to an action [in personam] * * * is not bound by or entitled to claim the benefits of any adjudication upon any matter decided in this action". Restatement, Judgments, § 93. The Restatement adds, by way of particularizing comment on this general rule, that "findings of law or of fact upon litigated issues * * * do not affect persons who are not parties or privies to the action and the judgment". Restatement, Judgments, § 93, comment on clause (b). Arenas v. United States, S.D.Cal.1951, 95 F.Supp. 962, affirmed, 9th Cir. 1952, 197 F.2d 418; Board of Directors of Ajax Electrothermic Corp. v. First Nat'l Bank, 1960, 33 N.J. 456, 165 A.2d 513.

■ We conclude that the trial court erred in giving a finding made in the earlier exoneration proceeding probative effect against the present respondent. We think this error can be corrected by a partial new trial limited to the issue of the cause of the sinking of the barge.

We have also considered the appellant's argument that the appellee was owner *pro hac vice* of the barge and as such responsible for the condition of the vessel and for alleged negligence of the captain in connection with the accidental sinking. However, the record amply supports the trial court's conclusion that the appellee was not the owner *pro hac vice*.

The judgment will be vacated and the cause remanded for further proceedings consistent with this opinion.

McLAUGHLIN, Circuit Judge (dissenting).

I dissent from the decision of the court. That the decision and my position be clear, it is necessary to identify the parties and recite the facts and the course of the litigation:

Chester Blast Furnace, Inc., now the appellant, Phoenix Steel Corporation, contracted to sell certain pig iron to Florence Pipe Foundry and Machine Company, now the appellee, R. D. Wood Company, to be delivered F.O.B. Chester, Pennsylvania. Florence then entered into a charter party with S. C. Loveland Co., Inc. for the transport of this pig iron on the barge Fell Loveland. On March 11, 1955, after Chester completed the loading of the barge, which had a maximum safe load of 1,000 gross tons, it discovered it had put 1,145 tons aboard. Chester sought to remove the excess pig iron but the captain, Joseph C. James, refused. In the early morning hours of March 12, 1955, the barge sank at Chester's pier. The captain went down with the barge.

On April 15, 1955, Loveland filed a petition in exoneration from or limitation of liability as owner of the Fell Loveland in the United States District Court for the Eastern District of Pennsylvania. 46 U.S.C. § 183(a) (1958). Florence and Chester were among the parties who filed claims. After the trial in which both Florence and Chester fully participated, Chester was permitted to withdraw "with prejudice". Regarding the two remaining claimants, Florence and another party not important in this appeal, the court made certain findings of fact and conclusions of law. Petition of S. C. Loveland Co., Inc., 170 F.Supp. 786 (E. D.Pa.1959). It held that Loveland was not entitled to exoneration since it found negligence on the part of the bargee, Captain James. The court did grant limitation because in the language of the statute the loss was occasioned by the negli-

gence of the operator "without the privity or knowledge of the owner", Loveland. The court decided that Florence was entitled to such damages as may fall under the terms "General Average, Sue and Labor" in the charter party between Loveland and Florence. No cross-libels or cross-claims were filed between Florence and Chester in that action.

All but 140 gross tons of pig iron were later salvaged and shipped to Florence. As Florence had paid for the entire cargo on April 29, 1955, it brought suit against Chester for the amount of pig iron paid for and not received, and expenses incurred. This claim was also heard in the United States Court for the Eastern District of Pennsylvania, and resulted in judgment for Florence, now R. D. Wood Co., in the amount of $6,931.57 with interest at 6% from February 17, 1959 plus costs. From this judgment, Chester, now Phoenix, has taken this appeal.

A major difficulty below was the effect, if any, to be given the findings of the limitation proceeding. However, no ruling on this point was made at the trial. The litigants had full opportunity to develop their contentions and produce evidence, independent of any prior findings. It was after trial, the court decided that "although Chester withdrew from that (limitation) proceeding, it did so with prejudice and only after it had been present for and participated in the trial of the issues, and is therefore bound by the necessary findings" of the limitation proceeding. Actually those findings were not binding in the present suit but not for the reasons relied on by the majority.

The majority concludes that because Chester was not a party to the judgment, though it was a party to the action, it is not affected by the limitation conclusions. I cannot agree with this. These matters, fully tried by Chester, were reduced to findings. See Commissioner v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 92 L.Ed. 898 (1947); Cromwell v. County of Sac, 94 U.S. 351, 353, 24 L.Ed. 195 (1876). If Chester had remained in the suit, the findings would not have changed. They were born of the evidence, which was mustered and molded to a large extent by Chester. Though Chester withdrew, the evidence remained and the findings would govern Chester in any subsequent suit by it against Loveland. Therefore, as I see it, the majority view is no answer to the question whether Chester and Florence are bound inter se by the findings of the limitation proceeding.

However, the basic proposition that Chester and Florence were not so bound is unquestionably sound. From the very nature of the limitation proceeding, Chester and Florence were non-adversaries, and since they filed no cross-claims inter se, remained such. Therefore as non-adversary, co-claimants seeking recovery against the shipowner, they were not bound by the judgment therein as between themselves, since their rights and liabilities inter se were not put in issue and determined. Bluefields S.S. Co. v. United Fruit Co., 243 F. 1, 10–11 (3 Cir. 1917); Ohio Casualty Ins. Co. v. Gordon, 95 F.2d 605, 609 (10 Cir. 1938); Greer v. Stanislau, 118 F.Supp. 494 (E.D.Pa.1953); Chikotas v. American Buslines, Inc., 192 F.Supp. 762 (E.D.Pa. 1960).

Though we are agreed that the trial judge was not controlled by the limitation findings, the record unmistakably reveals the error in that respect to have been harmless. The injury the majority feels accrued to Chester by the ruling, is more apparent than real. Before error is reversible it must be prejudicial (Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)), and in this appeal the limitation findings had no effect on the determination of the issues that developed in the trial.

The two contentions of Chester below were that Florence was the owner pro hac vice and responsible for the captain's negligent refusal to allow Chester to remove the excess pig iron, or in the alternative that the captain's negligence was the intervening, supervening cause of the sinking of the barge.

No time need be spent with respect to the first contention since the majority

concedes that the trial court decided rightly that although a dumb barge was involved, it was not a demise and that therefore "the appellee was not the owner pro hac vice".

Chester's alternative position was that the captain's negligent refusal to allow Chester to remove the excess pig iron from the barge, was a superseding cause of the sinking of the barge.[1] This points to the non-prejudicial effect of the first limitation finding[2] by which the trial court felt governed. That James, the master of the Fell Loveland, was negligent, was not disputed by either party, but as to the point in dispute, the court rightly decided it was not a supervening cause. The Restatement doctrine followed by the court represents the controlling law in this circuit:

> "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> "(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> "(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person so acted."
> Restatement of Torts § 447.

See also Bowser v. Publicker Industries, 101 F.Supp. 386 (E.D.Pa.1951); Lebeck v. William A. Jarvis, Inc., 145 F.Supp. 706 (E.D.Pa.1956); affirmed 250 F.2d 285 (3 Cir. 1957); DiGironimo v. American Seed Co., 96 F.Supp. 795 (E.D. Pa.1951). The district judge said:

> "It was within the ambit of foreseeability that the master of the FELL LOVELAND might negligently refuse to permit unloading of the excess cargo. Chester knew that on past trips, he had already carried excessive loads. The deliberate overloading of all kinds of freight carriers is a notorious and not uncommon custom. Had the overload been considerably more, James' actions may have been less likely. But, as the load was not greatly in excess of what the barge had carried before, it was not unforeseeable that James might want to risk the trip, negligent though that was."

The factual basis for the conclusion of law had support in the evidence and was not clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). Therefore, as to the contentions upon which Chester grounded its defense, the court was entitled to hold in favor of Florence.

The opinion of this court in vacating the judgment and calling for partial new trial, resurrects an issue never pursued or developed below, i. e., the question of unseaworthiness. The majority asserts that if he felt free to do so, the trial judge could have found that the barge sank because it was unseaworthy. I disagree. Chester's defense of unseaworthiness was within the frame work of its overall position that Florence was owner pro hac vice by virtue of its charter party.[3] Since the court rightly determined

---

1. If Loveland was found to be in control, and the negligence of its servant was the superseding cause, Chester would be free from responsibility.

2. The three findings which the district court thought binding were:
    "1. James, the Master of the Fell Loveland was negligent in not allowing Chester to remove the excess pig iron from the barge, or in not contacting his employers, S. C. Loveland Co., Inc. for instructions.

"2. The barge sank because it was overloaded.
    "3. Florence had notified Chester of the safe capacity of the barge and was, therefore, not contributorily negligent in the overloading."

3. In its answer, Chester raised the following as its Second Defense:
    "Any and all losses alleged to have been sustained by Libellant (Florence) were caused or contributed to by the conduct of the Libellant in supplying an

Florence was not owner pro hac vice, Chester by its evidence had to establish either that the barge was unseaworthy and that this unseaworthiness was *the* proximate cause of the sinking of the barge;[4] *or* that the captain's negligence was a superseding proximate cause of the sinking; *and* put Florence to proof that it (Chester) was negligent (in overloading the barge) and that this negligence was a proximate cause of the sinking of the barge. That was the complete posture of Chester's trial position.

Even if there was unseaworthiness and it was a proximate cause of the sinking, and even if the captain's negligence was a contributing cause, *if* Chester was negligent, and its negligence was a proximate cause, and Florence was not negligent, Florence was entitled to a verdict against Chester. See Kendrick v. Piper Aircraft Corp., 265 F.2d 482 (3 Cir. 1959). Chester's position had to be *either* that unseaworthiness was the only and proximate cause of the sinking or that the captain's refusal to permit Chester to remove the overload was the superseding cause of the sinking. Chester could not escape from liability by both doors. Evidence in support of one position directly negated the other. Chester could not wisely give evidence that the sole cause of the barge's sinking was unseaworthiness, and also that the cause of the barge's sinking was the refusal of the barge's captain to remove the excess which caused the sinking.

Chester had to and did make a choice. It relied solely on the theory that Florence was owner pro hac vice and responsible for the negligence of the captain, or in the alternative that the captain's negligence, as servant of shipowner, was the superseding or proximate cause of the sinking.[5] Unseaworthiness was never an issue. It was not mentioned either in Florence's or Chester's pretrial memoranda or referred to in the pretrial order. Among the many colloquies throughout the trial, there are very few allusions to seaworthiness,[6] all of which appeared in discussions of what occurred in the limitation proceeding, where seaworthiness was involved. Only once in argument, early in the trial, did counsel for Chester mention unseaworthiness.[7] It was never referred to in offers of proof nor did any of Chester's witnesses give testimony regarding it.[8] The point was not contained in requests for findings by either

---

unseaworthy barge and in permitting its duly authorized servants, agents, or employees then and there acting on behalf of the Libellant and in furtherance of the business of the Libellant, to load the barge in the alleged improper manner." My reading of the answer does not disclose that Chester alleged that the cause of the barge's sinking was its unseaworthiness.

4. See The Josephine, 37 F.2d 928 (D.C. Pa.1930), affirmed 49 F.2d 207 (3 Cir. 1931).

5. Chester's counsel would seem to have been influenced by what occurred in the previous limitation action. Petition of Fell Loveland, 170 F.Supp. 786 (E.D.Pa. 1959). There, in its claim against Loveland, Florence's request for a finding of fact that "the cause of the sinking was unseaworthiness," was denied, but Florence did get a determination that the captain was negligent in not requiring the employees of Chester to remove the excess pig iron.

6. See [N.T.P. 52, 71, 73].

7. Said counsel for Chester: "Now so far as this defendant is concerned, we do not agree that the overloading was the cause of the barge sinking, and it is our contention that the burden will be on the plaintiff here to establish first, the seaworthiness of the barge and that the overloading was a proximate cause. Even assuming that it is true, we say that this overloading was accepted by the master who was the servant, agent, or employee of the defendant (sic Plaintiff), who refused to permit us to take it off and that under these circumstances the overloading was not proximate cause but his refusal to permit us to take it off." Note: Only if Florence were owner pro hac vice would it be its burden to show seaworthiness.

8. The gist of the testimony of witnesses Cooke, Woodard and Keller, was that the captain was responsible for the loading and that he refused to permit Chester to remove the excess pig iron. The only "witness" who could be said to give testimony was T. J. Nolan. Nolan was not present. His testimony given in the lim-

928

counsel nor in the opinion of the district court.

In connection with the proposition that unseaworthiness was never in the claim at bar, it is well worth while to examine the support that has been mustered by the majority for its thought, that if free to do so, the court could have found that the unseaworthiness was the cause of the sinking of the barge.

It is urged that in circumstances like these where a barge sinks while moored at a pier in a quiet water, without evidence of contact or collision, there arises a presumption of unseaworthiness. Commercial Molasses Corp. v. New York Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941); Eastern Gas & Fuel Associates v. Martin Marine Trans. Co., 190 F.2d 394 (3 Cir. 1951); S. C. Loveland Co. v. Bethlehem Steel Co., 33 F.2d 655 (3 Cir. 1929). This principle is universally accepted.[9] However, for several cogent reasons it is not applicable to this appeal.

First of all, it was never pleaded or urged in the district court. Secondly, the presumption arises only where a "vessel sinks from an unknown cause under circumstances where she had been subjected to no external peril, and where nothing but her unseaworthiness can explain the accident", where the only inference in the circumstances is that of unseaworthiness.[10] "As the circumstances attending the sinking * * * do not exclude all inferable causes except that of unseaworthiness, but, on the contrary, very plausibly suggest another cause, the presumption does not exist." The Transit,

250 F. 71 (3 Cir. 1918). Here the cause was far from unexplained. The evidence was abundant and to me compelling, that the cause of the sinking was the overloading.

Thirdly, Chester is not entitled to take advantage of this presumption which is designed necessarily to work against one who is in control of the barge or ship, i. e., private carrier, shipowner or owner pro hac vice. Florence was none of these. This presumption like res ipsa loquitur takes on the character of circumstantial evidence for the purpose of a party's prima facie cause of action. It shifts the burden of going forward with the evidence. If the defendant elects not to do so the plaintiff's claim must be submitted to the court or jury. See Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815 (1913).

However, such presumption, whether it be unseaworthiness or res ipsa loquitur,[11] can only work against the party, if any, who was in control of the instrumentality and had the "opportunity * * * to know the fact in issue and to account for the loss." Commercial Molasses Corp. v. New York Barge Corp., 314 U.S. 104, 111, 62 S.Ct. 156, 161, 86 L.Ed. 89 (1941). The Josephine, 37 F.2d 928 (3 Cir. 1930). Where the person who is in control of the instrumentality (Loveland was properly found to be in control of the barge) is not in the suit, the presumption cannot be brought into the litigation in aid of a party thereto. The strange attempt in that regard on behalf of the appellant is to say the least one of novel impression. The decisions are legion respecting the

itation proceeding was read into the record, over the objection of counsel for Chester, who now apparently relies on it.

9. See also Werk v. Leathers, 29 Fed.Cas. 703, (No. 17,415) (C.C.La.1872); The Doyle, 105 F.2d 113 (3 Cir. 1939); Savannah Lighterage and Transfer Co. v. Atlantic Creosoting Co., 157 F.2d 797 (5 Cir. 1946); The Transit, 250 F. 71 (3 Cir. 1918); Banks v. Chas. Kurz Co., 69 F.Supp. 61 (D.C.Pa.1946).

10. In Jungshoved, the court stated that where the sinking of a lighter in smooth water and calm weather, under less than the load for which her size fitted her, there is a presumption of unseaworthiness. The Jungshoved, 290 F. 733 (2 Cir. 1923).

11. The Supreme Court has held that this presumption of unseaworthiness is but a "particular application of the doctrine of res ipsa loquitur." Commercial Molasses Corp. v. New York Barge Corp., 314 U.S. 104, 113, 62 S.Ct. 156, 162, 86 L.Ed. 89 (1941).

use of res ipsa loquitur and the presumption of unseaworthiness but are uniformly against persons, parties to the suit, defendants, in evidentiary aid of parties to the suit, plaintiffs.[12]

Realizing its purpose, i. e., placing on a defendant the burden of going forward with evidence, and presenting a jury question, and its underlying reasoning, i. e., the person who was in control of the instrumentality which caused the injury is in the best position to give an explanation, it is apparent that these presumptions can work to assist a party only against a party who is charged with negligence and in control of the instrumentality. Plainly the doctrine calls for rebuttal. Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815 (1913). Unless that person, in charge, is a party, he cannot offer rebuttal. Here Loveland was not a party. See Siebrand v. Gossnell, 234 F.2d 81 (9 Cir. 1956). Res ipsa loquitur is offensive not defensive. It is not to be misused by a defendant in an endeavor to shift blame on a non-party. It has no rightful place in this appeal.

There remains the question of whether there is positive evidence in the record to support an affirmative finding of unseaworthiness. The sole testimony is that of Nolan, who said there was a leak in the barge, adding that the captain claimed whatever water accumulated in twenty-four hours could be taken out in ten minutes [N.T. 134–135]. This evidence fails to justify a finding that the cause of the sinking of the barge was unseaworthiness. Nolan did not testify in this trial. His evidence had been given in the prior limitation proceeding and read into the record below. Nolan was a foreman of the Chester Co. and called by Chester in the limitation trial. Loveland and Florence cross-examined, Florence with the apparent motive of showing that the captain was negligent. Later, after Chester withdrew from suit, Florence submitted a request for a finding that the Fell Loveland was unseaworthy which was denied.[13] That is of no consequence at this stage, since we are all agreed that the limitation findings were not binding. What is important is the motive and interest of Florence in its cross-examination and the relationship of Chester and Florence inter se.

Some courts have held that depositions in preparation of a previous action, or testimony at a prior trial, involving substantially the same issues, are admissible substantively, if the former testimony was given upon an issue in which the party-opponent in that cause had the same interest and motive in his cross-examination that the present opponent has. Copeland v. Petroleum Transit Co., 32 F.R.D. 445 (E.D.S.C.1963); Hertz v. Graham, 23 F.R.D. 17 (S.D.N.Y.1958); First National Bank in Greenwich v. National Airlines, 22 F.R.D. 46, 51 (S.D. N.Y.1958). See 5 Wigmore, § 1388, p. 95 (3d Ed.1940).

In this circuit the testimony in one action is not admissible in a subsequent proceeding unless there are essentially both the same issues and the same parties. See Franzen v. E. I. Dupont De

12. From the beginning the presumption was assumed to work against the person who was in control of the thing which caused the injury and who was charged with negligence, i. e., the defendant. Scott v. Linden & St. K. Docks Co., 159 Eng. Reprint 665 (Ex.Ch.1865); Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815 (1913); San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98–99, 32 S.Ct. 399, 56 L.Ed. 680 (1912); Jesionowski v. Boston & Maine R.R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 (1957). Res ipsa loquitur has been defined as the doctrine that proof that a thing which caused an injury to a person was under the control and management of the person charged with negligence, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control and management used proper care, affords evidence in the absence of explanation, that the injury arose from or was caused by want of due care on the part of the person charged with negligence. Cases ibid. See also, 38 Am.Jur. Negligence ¶295 (1941); 169 A.L.R.Annot. 953 (1947).

13. See Footnote 5.

Nemours & Co., Inc., 146 F.2d 837 (3 Cir. 1944); Smythe v. Inhabitants of New Providence Township, 263 F. 481 (3 Cir. 1920); Wolf v. United Airlines, 12 F.R.D. 1 (M.D.Pa.1951). While Florence and Chester were parties in the limitation action they were not adversaries. They used Nolan for a purpose which was not adversary between them. Loveland was the real adversary there, but was not a party in this action. Not only were the parties in their relationship to one another different, but their motives and interests as well. Under both views, the testimony was not evidentiary in this cause.

In any event all Nolan's evidence indicated was that a leak existed, the twenty-four hour intake from which could be pumped out in ten minutes. This does not make an unseaworthy barge. The testimony went no further; there was never a causal connection established between the leak and the sinking.

From the record the court could not have rationally concluded that the barge sank from unseaworthiness. Affirmatively, for the finding that the barge sank because it was overloaded, there was only one alternative given the trial judge, as to the responsible cause of the sinking, i. e., either it was the captain's negligence or the overloading. As to the material cause of the sinking, there was no real argument. It was the overloading.[14]

Ernest Tieder, marine superintendent, testified that the overloading was, in his expert opinion, the cause of the sinking of the barge. In his words, it was the "straw which broke the camel's back." [N.T. 47]. The evidence pointed irrevocably in that one direction. The court had no other option but that the overloading caused the sinking. Its thought that the limitation findings were binding had no effect on this determination.

The trial judge also felt himself circumscribed by the limitation finding that Florence was not negligent in that it had notified Chester of the safe capacity of the barge. Here as the evidence was introduced at trial, Chester's contention that Florence failed to notify Chester of the maximum load as presented in its complaint and answer, gave way to a more fundamental query—whether Florence had the duty to notify, whether Florence was in fact the owner pro hac vice, a query that had not been decided in the limitation cause. The evidence developed along such lines that a finding of contributory negligence depended first on a finding that Florence became owner pro hac vice. This fact is sharply illustrated by the requests for findings made by Chester, which if accepted, would have tended to identify Florence as owner pro hac vice.[15] Although, therefore, the court considered itself governed by the limitation holding that Florence was not contributorily negligent (regarding notification to Chester of the safe maximum load), it is equally obvious that in the light of the way the evidence unfolded, that finding had no effect on the court's legal conclusion that " * * * the sink-

---

14. Counsel for Chester stated below: " * * * [T]here is no question about the proof of the overloading. As a matter of fact, my testimony would corroborate it. My point is that the defense to the claim of Florence against Chester Blast is that this overloading was not the proximate cause of the sinking of the barge but that the proximate cause of the sinking of the barge was the refusal of the captain, who was the servant, agent or employee of Florence, to permit us [Chester] to remove it.". (N.T. 76–77).

15. Requests of Respondent—Chester:
"1. The charter party from Loveland to Florence was for a bare boat charter of a barge without power, accompanied by a Master. (DENIED).
"2. * * *
"3. Florence brought the barge Fell Loveland to the wharf at Chester to receive the pig iron. (DENIED).
"4. The pig iron was loaded by Chester on the barge under the control of the Master of the barge. (DENIED).
"5. Captain James was the Master of the barge, who was present at the time of the loading. (ACCEPTED).
"6. * * *"

ing of the Fell Loveland was not caused or contributed to by any negligence or fault on the part of libellant Florence." That determination depended on the decision that Florence was not owner pro hac vice, that Captain James was not its servant and, therefore, that Florence did not have the duty to notify. Apart from the evidence that Captain James was negligent, which was held not to be Florence's responsibility, there was not a scintilla of evidence or a theory advanced that Florence had been otherwise contributorily negligent.

The majority view is interesting but it is of an area far away from the evidential confines of this appeal. Its decision is grounded on an issue of unseaworthiness which was never pursued or developed at trial. The acceptance of the limitation findings did not alter the course of trial. Nothing the court did or said below in any way hindered the parties from presenting evidence and pursuing their contentions as they did. There was a full and liberal trial, during which the question of unseaworthiness was never raised. A close examination of the requests for findings submitted by the parties gives an accurate picture of what the trial was about. Neither party asked for a finding regarding unseaworthiness.

It was only after the trial was completed that the court ruled that certain limitation findings were conclusive. And they had no prejudicial effect. The valid evidence produced at the trial led unalterably to the conclusion that the captain was negligent, that the barge sank from the overloading and that Florence was not contributorily negligent. To find otherwise would have been against the clear weight of the evidence. The nub of the problem is simply that the majority does not review the trial that was had but centers its attention upon, and calls for a retrial of, a theory not tried below. The appeal should be finally disposed of now by affirmance of the district court judgment.